COPY
Original Received
AUG 17 2009
Clerk of the Trial Courts

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| UNION OIL COMPANY OF CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>MARATHON OIL COMPANY and STATE OF ALASKA,<br><br>Defendants. | Case No. 3AN-09-____ CI |

## COMPLAINT

COMES NOW plaintiff Union Oil Company of California, and for its Complaint against defendants Marathon Oil Company and the State of Alaska alleges as follows:

### PARTIES & JURISDICTION

1. Plaintiff Union Oil Company of California ("Union") is a California corporation. Union has obtained a valid certificate of authority to transact business in the State of Alaska, has paid its biennial corporation tax last due, has filed its biennial report for the last reporting period, and is in every other respect qualified to bring this action.

2. Defendant Marathon Oil Company ("Marathon") is an Ohio corporation doing business in the State of Alaska, and holding a certificate of authority to transact business in the State of Alaska.

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 1 of 17
69280-0013/LEGAL16753022.2

Exhibit A
Page 1 of 17 Pages

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 1 of 17

3. Defendant State of Alaska ("State") is a state of the United States of America. The State is a party to an oil and gas lease and other agreements with Union and Marathon that are directly affected by the controversy that is the subject of this action.

4. A substantial controversy exists between Marathon, the State and Union regarding the nature and extent of the obligation of Union to pay abandonment or decommissioning costs related to the Spurr Facilities (as defined in ¶ 6, *infra*), located in Cook Inlet, Alaska. Union seeks a declaratory judgment to establish the respective rights, obligations and relations of the parties. The Superior Court has jurisdiction pursuant to AS 22.10.020(a) and the Alaska Declaratory Judgment Act, AS 22.10.020(g).

5. Venue is proper in this Court under Alaska Rule of Civil Procedure 3 and AS 22.10.030.

## NATURE OF THE ACTION

6. This case involves responsibility for the costs arising out of the abandonment and decommissioning of certain offshore and onshore oil and gas drilling, development, production and processing facilities operated as part of the North Trading Bay Unit, Cook Inlet, Alaska, known as "the Spurr Facilities."

7. On June 1, 2009, Marathon filed an adversary Complaint for Declaratory Judgment and for Damages (the "Bankruptcy Court Complaint") in a proceeding related to the bankruptcy of Pacific Energy Resources, Ltd., et al., pending before the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). *Marathon Oil Company v. Pacific Energy Resources, Ltd., et al.*, Ch. 11 Case No. 09-10785 (KJC). Adv. Pro. No. 09-51004 (D. Del.). In the Bankruptcy

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 2 of 17
69280-0013/LEGAL16753022.2

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 2 of 17

Exhibit A
Page 2 of 17 Pages

FERRIS COLE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

Court Complaint, Marathon requests a determination that Union is liable for a portion of the costs arising out of the abandonment and decommissioning of the Spurr Facilities.

8. Among other grounds, Marathon asserts that Union is obligated to Marathon for a share of the costs as a result of Marathon's alleged status as a "third party beneficiary" to obligations owed by Union to the State under a certain oil and gas lease between the State, as lessor, and Union and Marathon, as co-lessees.

9. On July 27, 2009, the State moved to intervene in the Bankruptcy Court Complaint. In doing so, the State asserted, among other things, that Marathon's claims "directly affect[ ] the State of Alaska's rights and interests" because the claims "will result in an adjudication of decommissioning duties, costs and liabilities" owed to the State as lessor under the oil and gas lease at issue, as well as various statutes and regulations enacted by the State in its capacity as an oil and gas lessor and otherwise. The Bankruptcy Court approved the order granting the State intervention on August 3, 2009.

10. Union has filed a motion to dismiss Marathon's Bankruptcy Court Complaint based on the grounds that Marathon's Bankruptcy Court Complaint against Union is not within the jurisdiction of the United States Bankruptcy Court and for other reasons.

11. The State similarly has requested that the Bankruptcy Court dismiss Marathon's Bankruptcy Court Complaint.

12. This action is brought to resolve in a proper forum the controversy between the parties arising out of Marathon's claims against Union.

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 3 of 17
69280-0013/LEGAL16753022.2

Exhibit __A__
Page __3__ of __17__ Pages

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 3 of 17

## FACTS

13. The Spurr Facilities were built and installed in the 1960s, for the exploration, development, production, processing and marketing of oil and gas from one or more oil and gas leases entered into by the State. On information and belief, the Spurr Facilities are no longer producing oil and gas. As a consequence, Marathon asserts that it is in the process of abandoning and decommissioning the Spurr Facilities.

### A. Lease ADL 17597: Spurr Facilities, the Unit Agreement and Unit Operating Agreement

14. The Spurr Facilities are located on or appurtenant to lands covered by State of Alaska Oil and Gas Lease ADL 17597, executed on or about March 1, 1962 ("Lease ADL 17597"). The State is the lessor under Lease ADL 17597.

15. Under Lease ADL 17597, at the end of its term the lessee is obligated "to deliver up said lands ... in good order and condition." In the event that the lessee surrenders all or any portion of the lands included in Lease ADL 17597 prior to the termination of the lease, the lessee is obligated "to place all wells on the surrendered land, or in the surrendered zones or horizons in condition satisfactory to Lessor for suspension or abandonment ...."

16. In addition to the provisions related to decommissioning and abandonment contained in Lease ADL 17597, the State has enacted various statutes and regulations in its capacity as lessor and otherwise further defining the process of abandoning and decommissioning facilities such as the Spurr Facilities.

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 4 of 17
69280-0013/LEGAL16753022.2

Exhibit A
Page 4 of 17 Pages

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09

17. Superior Oil Company ("Superior") was the original lessee under Lease ADL 17597. On April 17, 1962, Superior assigned to Texaco, Inc. ("Texaco") a fifty percent (50%) interest in Lease ADL 17597.

18. Under its terms, interests in Lease ADL 17597 may be assigned "with approval of the Lessor." The assignment of an interest in the Lease by Superior to Texaco was approved by the State, through the Alaska Department of Natural Resources ("ADNR").

19. On information and belief, Texaco and Superior installed the Spurr Facilities in or around 1968. The Spurr Facilities include the Spurr Platform and accompanying wells, the facilities involved with the Texaco-Superior Granite Point Production Facility, and related pipelines and other facilities associated with both.

20. In 1971, a portion of Lease ADL 17597 was joined with portions of two other leases to form the North Trading Bay Unit ("NTBU"). These arrangements were documented by the Unit Agreement, for the Development and Operation of the Hemlock and G Formation, North Trading Bay Unit, State of Alaska, dated June 1, 1971 ("Unit Agreement").

21. The portion of Lease ADL 17597 included in the NTBU was only a portion of the acreage included in the Lease.

22. The NTBU is limited to only one geologic zone within the specified acreage – the Hemlock and G Formation. The Hemlock and G Formation is defined for purposes of the NTBU as the "stratigraphic equivalent of that occurring between the electric log depths of 8,818 feet and 10,174 feet in the Atlantic Richfield Company Trading Bay State No. 1 well drilled in Section 26, T10N-R13W, Seward

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 5 of 17

Exhibit A

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09   Page 5 of 17 Pages

Meridian, Alaska." On information and belief, the Hemlock and G Formation is only one potential source of oil and gas within the boundary of Lease ADL 17597.

23. The remaining portions of Lease ADL 17597, including zones otherwise within the Unit but outside of the Hemlock and G Formation, are not covered by the Unit Agreement.

24. The original parties to the Unit Agreement were the State, Atlantic Richfield Company ("ARCO"), Texaco and Superior. Texaco and Superior jointly held the portion of Lease ADL 17597, while, on information and belief, ARCO held the portions of the two other leases that became unitized as part of the NTBU. At the time of formation of the NTBU, ARCO had already built, developed and owned an oil and gas drilling platform now known as the Spark Platform (with accompanying wells) and the ARCO Granite Point Production Facility, and Texaco and Superior had already built, developed and owned the Spurr Facilities.

25. The Unit Agreement modified and amended Lease ADL 17597 to the extent provided in the Unit Agreement.

26. In order to become a party to the Unit Agreement, the lessees owning interests included in the NTBU also were required to become a party to a unit operating agreement. The Unit Agreement provides that the "costs and expenses incurred ... in conducting unit operations ... shall be paid and apportioned among and borne by the owners of working interests ... in accordance with" the unit operating agreement. Copies of the unit operating agreement are required by the Unit Agreement to be filed with the State.

27. The lessees owning interests in the NTBU entered into the Unit Operating Agreement, Hemlock and G Formation, North Trading Bay, Cook Inlet,

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 6 of 17
69280-0013/LEGAL16753022.2

Exhibit A

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 6 of 17   Pages

Alaska, dated June 1, 1971 ("Unit Operating Agreement"). The original parties to the Unit Operating Agreement were ARCO, Texaco and Superior.

28. Consistent with the Unit Agreement, the Unit Operating Agreement establishes the Hemlock and G Formation Working Interest Participating Area ("WIPA") and provides the terms under which "costs and expenses incurred ... in conducting unit operations ... shall be paid and apportioned among and borne by the owners of working interests."

29. Neither the Unit Agreement nor the Unit Operating Agreement govern operations on Lease ADL 17597 outside of the portion included in the NTBU. The Spurr Platform has produced oil and gas both from the NTBU and outside of the NTBU.

30. Under the Unit Operating Agreement, ARCO, Texaco and Superior dedicated "to the use of the Hemlock and G Zone WIPA" the following items:

"A. All wells heretofore drilled to the Hemlock and G Zone WIPA.

B. All production facilities serving the Hemlock and G Zone WIPA and drilling or workover rigs capable of pulling and redrilling operations.

C. All pipelines serving the Hemlock and G Zone WIPA including the common pipeline between Spark Platform and Trading Bay Platform.

D. Platform space applicable to items A, B, and C above and necessary to operate the Hemlock and G Zone WIPA."

31. Recognizing that only a portion of Lease ADL 17597 is included in the NTBU, the owners of the Spurr Facilities specifically retained "the complete control

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 7 of 17
69280-0013/LEGAL16753022.2

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 7 of 17

Exhibit A
Page 7 of 17 Pages

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

and use of its respective platform space not necessary for operation of the Hemlock and G Zone WIPA including but not limited to the right to drill, complete and produce wells drilled for other than the Hemlock and G Zone WIPA either inside or outside the Unit Area."

32. In the Unit Operating Agreement, the parties specifically provided for the costs of abandonment related to the facilities, as follows: "The costs of plugging and abandoning wells and salvaging platforms shall be the obligation of the Parties originally contributing such."

**B.   The 1988 Agreements**

33. Pursuant to an Agreement to Purchase and Sell, effective August 1988 ("1988 Purchase and Sale Agreement"), Texaco and Mobil Exploration and Producing North America, Inc. ("Mobil"), as successor in interest to Superior, assigned their full interest in Lease ADL 17597 and the Spurr Facilities to Union. On information and belief, the assignment was approved by the ADNR as required by the terms of Lease ADL 17597.

34. Pursuant to a "Letter Agreement Texaco and Mobil Cook Inlet Producing Properties," dated July 26, 1988 (the "1988 Letter Agreement"), Union in turn assigned to Marathon a fifty percent (50%) interest in the Spurr Platform "and any appurtenant facilities thereto", a fifty percent (50%) interest in gas produced from Lease ADL 17597 and oil production outside of the NTBU, and one hundred percent (100%) of the interest in oil reserves and production inside of the NTBU. On information and belief, the assignment was approved by the ADNR as required by the terms of Lease ADL 17597.

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 8 of 17
69280-0013/LEGAL16753022.2

Exhibit A
Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/03/09   Page 8 of 17 Pages

35. As had been the custom among the parties prior to that time, the 1988 Letter Agreement refers to the Spurr Platform as the "Texaco 'A' Platform." Among other things, the 1988 Letter Agreement provides for the payment of costs of abandonment as follows:

> The cost to abandon the Texaco 'A' Platform and any related facilities, pipelines and onshore production facilities shall be pro-rated between Union and Marathon on the basis of their respective ownership of cumulative equivalent hydrocarbon production from the Texaco 'A' Platform. For the purpose of its abandonment calculation, it shall also include certain Monopod [the Monopod is another oil and gas platform located in the Cook Inlet] Sub-Thrust wells which have been drilled from the Monopod and have their producing intervals located on Lease ADL-17597, but excluding well A-28RD. The commencement of the measurement period for the cumulative equivalent hydrocarbon production shall be from the effective date of this Agreement. Equivalent hydrocarbon production shall be the sum of the barrels of crude oil production and one-sixth of the natural gas sold or transferred (in MCF at standard conditions).

The 1998 Letter Agreement provides that it "will be effective March 31, 1988."

### C. Union's 1998 Sale of Its Interest in the Spurr Facilities

36. The Spurr platform ceased production in 1992.

37. On information and belief, by assignment dated December 30, 1996, effective October 1, 1996, and approved by ADNR on May 6, 1997, Marathon assigned to Forcenergy Inc. ("Forcenergy") fifty percent of Marathon's interest in the portions of Lease ADL 17597 not included in the NTBU.

38. In addition to providing the base from which to explore for, develop, produce, process and market oil and gas from within the NTBU, the Spurr Facilities historically also had been used for the same purposes with respect to oil and gas located on portions of Lease ADL 17597 located outside of the NTBU.

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 9 of 17
69280-0013/LEGAL16753022.2

Exhibit A

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 9 of 17

Page ____ of ____ Pages

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

39. On information and belief, prior to 1998 Forcenergy did not have the right to use the Spurr Facilities to explore for, develop, produce, process and market oil and gas from the portions of Lease ADL 17597 acquired by Forcenergy in 1996 from Marathon.

40. Pursuant to an Assignment and Bill of Sale (the "1998 Sale Agreement"), effective December 22, 1998, Union sold to Forcenergy "[a]ll right, title, and interest of [Union] in and to the" Spurr Facilities previously acquired by Union from Texaco and Mobil pursuant to the 1988 Purchase and Sale Agreement.

41. The interest conveyed by Union to Forcenergy pursuant to the 1998 Sale Agreement was Union's remaining fifty percent (50%) interest in the Spurr Facilities not conveyed to Marathon pursuant to the 1988 Letter Agreement. The interest conveyed to Forcenergy included the right, preserved under the Unit Operating Agreement, to use the Spurr Facilities "to drill, complete and produce wells drilled for other than the Hemlock and G Zone WIPA either inside or outside the Unit Area."

42. Pursuant to the 1998 Sale Agreement, Forcenergy assumed and agreed "to perform and be bound by all provisions, contractual duties and obligations of [Union] as owner of the Property to the extent that the same are valid and subsisting on the Effective Date [December 22, 1998]." In addition, Forcenergy agreed, at its sole expense, to "comply with all laws, rules, regulations, orders and ordinances ... of any governmental authority claiming jurisdiction over the Property, including, but not limited to those laws pertaining to the abandonment of wells, the plugging of inactive wells and the restoration of the surface."

43. Union provided Marathon with a copy of the 1998 Sale Agreement by a letter sent from Union to Marathon dated December 28, 1998. There were no

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 10 of 17
69280-0013/LEGAL16753022.2

Exhibit A

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/Page Page 10 of 17 Pages

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

restrictions on the right of Union to convey its interests in the Spurr Facilities to Forcenergy, and Marathon's consent was not required.

D. **Subsequent Transfers of the Spurr Facilities**

44. On information and belief, in or about 1999 Forcenergy transferred all of its interest in the Spurr Facilities and the related interests it had acquired from Marathon in Lease ADL 17597 to affiliates of Forest Oil Corporation ("Forest"). On information and belief, the assignment of Lease ADL 17597 to Forest was approved by the ADNR as required by the terms of Lease ADL 17597.

45. On information and belief, in or about 2007 Forest transferred all of its interest in the Spurr Facilities and the related interests it had acquired in Lease ADL 17597 to affiliates of Pacific Energy Resources, Ltd ("Pacific"). On information and belief, the assignment of Lease ADL 17597 to Pacific was approved by the ADNR as required by the terms of Lease ADL 17597.

46. Union was not a party either to the transfer by Forcenergy of its interest in the Spurr Facilities to Forest, or to the transfer by Forest of its interest in the Spurr Facilities to Pacific.

E. **Marathon's Actions**

47. Since 1988, Marathon has been the Operator and manager of the NTBU and the Spurr Facilities. From 1988 to 1992, the Spurr Facilities were active as an oil and gas production platform facility operated by Marathon. The Spurr platform ceased production in 1992.

48. In its capacity as Operator of the NTBU and the Spurr Facilities, Marathon asserts that it has submitted and received approval of plans for

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 11 of 17
69280-0013/LEGAL16753022.2

Exhibit _A_

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 11 of 17

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

decommissioning work related to the Spurr Facilities from the State, acting through the ADNR.

49. Pursuant to these plans, Marathon asserts that decommissioning work related to the Spurr Facilities has begun, but that further work is required in order to finalize abandonment and decommissioning of the Spurr Facilities in accordance with the plans submitted by Marathon to the ADNR, relevant Alaska statutes and regulations and contractual obligations.

50. On information and belief, subsequent to the transfer of the Spurr Facilities from Forcenergy to Forest, Marathon undertook several activities related to the Spurr Facilities, some of which may be characterized as decommissioning or abandonment activities. On information and belief, in connection therewith Marathon submitted several Authority for Financial Expenditures ("AFE's") to Forest and later Pacific for costs associated with the Spurr Facilities. On information and belief, several AFE's submitted to Forest were approved and returned to Marathon. On information and belief, Forest submitted payments to Marathon for its share of expenditures associated with such AFE's.

51. On information and belief, in 2008 Marathon submitted to the ADNR the North Trading Bay Unit, Final Thirty-Fifth Plan of Development (and First Plan of Abandonment), dated May 30, 2008 (the "2008 POD"). On information and belief, the 2008 POD was approved by the ADNR.

52. On information and belief, Marathon sent the 2008 POD to Pacific.

53. On information and belief, on March 20, 2009, Marathon submitted a revised decommissioning plan to the ADNR titled the Final Thirty-Sixth Plan of

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 12 of 17
69280-0013/LEGAL16753022.2

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 12 of 17

Exhibit A
Page 12 of 17 Pages

Development, North Trading Bay Unit, Cook Inlet, Alaska ("2009 POD") deferring some, but not all, decommissioning work related to the Spurr Facilities.

54. Neither the AFE's for costs associated with the Spurr Facilities, nor the 2008 or 2009 POD's, were submitted to Union in advance of the activities undertaken by Marathon, and Union has not otherwise reviewed or approved the AFE's or POD's. Consistent with the terms of the Unit Operating Agreement, the 1988 Letter Agreement and the subsequent sale by Union of its interests in the Spurr Facilities to Forcenergy, Marathon has submitted AFE's and POD's only to those parties who owned an interest in the Spurr Facilities at the time the AFE's and the 2008 and 2009 POD's were prepared and submitted.

F. **Marathon's Claims**

55. In the Bankruptcy Court Complaint, Marathon asserts that Union is liable to Marathon for a share, variously characterized by Marathon as "Union's share" or "Union's portion," of the current and future costs to decommission and abandon the Spurr Facilities (i) as a result of the 1988 Letter Agreement, (ii) in Marathon's claimed capacity as a third party beneficiary of certain agreements, including as a third party beneficiary to the obligations owed by Union to the State under Lease ADL 17597, and various laws and regulations enacted by the State in its capacity as an oil and gas lessor and otherwise, (iii) under the Unit Agreement and the Unit Operating Agreement as a result of certain interests retained by Union in ADL 17597 (but not in the Spurr Facilities), (iv) to avoid Union's "unjust enrichment" at the expense of Marathon, and (v) under common law indemnity.

56. Marathon has not defined "Union's share" or "Union's portion" of the current and future costs to decommission and abandon the Spurr Facilities which
COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 13 of 17

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 13 of 17

Exhibit A
Page 13 of 17 Pages

Marathon claims is Union's obligation. At various times, Marathon has characterized the allocation of those costs to Union as (i) "proportionate" with those of a number of other entities, (ii) determined by the 1988 Letter Agreement, (iii) determined by the Unit Agreement, (iv) determined by the Unit Operating Agreement, (v) determined pursuant to Lease ADL 17597 by the amount of Union's "unjust enrichment" due to the failure to pay a portion of the costs, and (vi) determined pursuant to Lease ADL 17597 by the principles of common law indemnity.

57. Union denies that it is liable for any current or future costs to decommission and abandon the Spurr Facilities. Thus, an actual and substantial controversy exists between Union and Marathon with respect to these costs.

58. If Union is liable for a portion of any current or future costs to decommission and abandon the Spurr Facilities under Lease ADL 17597 and the statutes and regulations enacted by the State in its capacity as lessor and otherwise, Union is liable only once and only to one party.

59. Union is subject to overlapping and potentially conflicting claims to the extent that Marathon claims that Union is liable to Marathon in Marathon's alleged capacity as a "third party beneficiary" to any obligations which Union may owe to the State under Lease ADL 17597 and the statutes and regulations enacted by the State in its capacity as lessor and otherwise, and the State claims separately that Union is obligated to the State for the same type of obligations. Thus, an actual and substantial controversy exists between Union, Marathon and the State with respect to these costs.

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 14 of 17
69280-0013/LEGAL16753022.2

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 14 of 17

Exhibit A
Page 14 of 17 Pages

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

## UNION's FIRST CLAIM FOR DECLARATORY RELIEF

60. Union incorporates by reference paragraphs 1 to 59 as if fully set forth herein.

61. Union is not liable for current or future costs incurred to decommission and abandon the Spurr Facilities, or its liability is conditioned or limited, for the following reasons:

    a. Under the 1998 Sale Agreement, Union's obligations for current and future costs to decommission and abandon the Spurr Facilities were assumed by Forcenergy and its successors. Marathon's past conduct in submitting decommissioning and abandonment plans and costs to Forcenergy and/or its successors, and accepting payment from Forcenergy and/or its successors demonstrates Marathon's awareness and acceptance of the assumption of these obligations by Forcenergy and its successors.

    b. By virtue of the assumption of liabilities by Forcenergy and/or its successors, Union is only secondarily liable for certain of the costs of decommissioning and abandoning the Spurr Facilities. Union is liable for such costs only in the event Forcenergy and all of its successors fail to perform their obligations, after reasonable efforts by Marathon to enforce these obligations.

    c. On information and belief, Marathon has not yet undertaken reasonable efforts to cause Forcenergy and all of its successors to perform their obligation to contribute to the costs of decommissioning and abandoning the Spurr Facilities. In the absence of such an undertaking by Marathon, and failure by Forcenergy and all of its successors to perform their obligations,

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 15 of 17
69280-0013/LEGAL16753022.2

Exhibit A

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 35 of 171

Page ___ of ___ Pages

Union has no liability for costs incurred by Marathon in decommissioning and abandoning the Spurr Facilities.

d. Even if Marathon previously has undertaken reasonable efforts to cause Forcenergy and its successors to perform their obligations, and Forcenergy and all of its successors have failed to do so, Union's obligation for the costs to decommission and abandon the Spurr Facilities is limited to the amount determined in accordance with the 1988 Letter Agreement.

## UNION'S SECOND CLAIM FOR DECLARATORY RELIEF

62. Union incorporates by reference paragraphs 1 to 61 as if fully set forth herein.

63. If Union is liable under Lease ADL 17597 and statutes and regulations enacted by the State in its capacity as lessor and otherwise for a portion of any current or future costs incurred to decommission and abandon the Spurr Facilities, Union is not liable to both the State and Marathon for such costs, but only to one party and for no more than an amount determined in accordance with the 1988 Letter Agreement.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Union Oil Company of California requests entry of judgment as follows:

1. Declaring that Union has no current liability for costs to decommission and abandon the Spurr Facilities;

2. Declaring that any future liability by Union for a portion of costs incurred by Marathon to decommission and abandon the Spurr Facilities is secondary, and contingent upon proof by Marathon that it has been unable to obtain such payment from Forcenergy and/or its successors after undertaking reasonable efforts;

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 16 of 17
69280-0013/LEGAL16753022.2

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 46 of 17

Exhibit A
Page 46 of 17 Pages

3. Declaring that if Union has any obligation to pay for a portion of the costs to decommission and abandon the Spurr Facilities, Union's portion is limited to an amount that is determined in accordance with the 1988 Letter Agreement;

4. Declaring that if Union is liable under Lease ADL 17597 or State statutes and regulations for a portion of any current or future costs incurred to decommission and abandon the Spurr Facilities, Union is liable only to one party and for no more than an amount determined in accordance with the 1988 Letter Agreement.

5. Awarding Union its attorneys' fees and costs; and

6. Granting such other and further relief as the Court may determine to be equitable and just.

DATED: August 17, 2009.

PERKINS COIE LLP
Attorneys for Plaintiff
Union Oil Company of California

By: _____
James N. Leik, Alaska Bar No. 8111109
Amy J. MacKenzie, Alaska Bar No. 0505026
Bradford G. Keithley, D.C. Bar No. 285015

PERKINS COIE LLP
1029 West Third Avenue, Suite 300
Anchorage, AK 99501-1981
907.279.8561 / Facsimile 907.276.3108

COMPLAINT
Union Oil v. Marathon Oil & State of Alaska
Case No. 3AN-09-____ CI
Page 17 of 17
69280-0013/LEGAL16753022.2

Case 3:09-cv-00190-RRB   Document 1-2   Filed 09/09/09   Page 17 of 17

Exhibit A
Page 17 of 17 Pages